IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

Filed/Docketed
Mar 22, 2018

IN RE:

DERRICK LARON HILL and TIA
MARIE HILL,

          Debtors.

Case No. 17-11083-M
Chapter 7

IN RE:

PRAYOON RANDY CHANTHAVONG
and MANIVONE CHANTHAVONG,

          Debtors.

Case No. 17-11503-M
Chapter 7

## MEMORANDUM OPINION

Most people expect to be compensated when they provide services in an arms-length transaction. A bankruptcy case often thwarts those expectations. Many unsecured creditors are taken by surprise when their otherwise legitimate claims go unpaid due to a debtor's bankruptcy filing. But professionals that target their services to bankruptcy debtors are well aware of the minefield they are entering when they engage with a financially insolvent client. Debtors' counsel and the courts, relying on the applicable provisions of the Bankruptcy Code, work together to see that such services are reasonably compensated in order to ensure that such services will continue to be available to debtors. Sometimes, despite their best efforts, even the fees of bankruptcy professionals cannot escape the fate of an unpaid debt. The following findings of fact and conclusions of law are made pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and venue is proper pursuant to 28 U.S.C. § 1409.[1]  Reference to the Court of this matter is proper pursuant to 28 U.S.C. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A).

## Findings of Fact

### Derrick and Tia Hill

On May 31, 2017, Derrick LaRon Hill and Tia Marie Hill (the "Hills") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Hill Case").[2]  The case was filed with the assistance of counsel, Greggory T. Colpitts and The Colpitts Law Firm ("Colpitts").  For his services related to the Hill Case, Colpitts agreed to accept $2,800, $800 of which was received prior to filing the case.[3]  Colpitts indicated that his services would be billed at a rate of $300 per hour for attorney time and $65 per hour for legal assistant time, in addition to actual expenses.  Colpitts also advised the Court that in the event the value of his services exceeded $2,800, he would file an additional application for fees and expenses with the Court.  The balance due to Colpitts was to be paid through the Hill's Chapter 13 Plan, as amended (the "Hill Plan").[4]  The Hill Plan set forth that $500 of their monthly plan payments in months 1 through 9 would be reserved and paid to Colpitts upon confirmation of the Hill Plan and approval by the Court of a fee application submitted by

---

[1]  Unless otherwise noted, all statutory references are to sections of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

[2]  *Case No. 17-11083-M, Docket No. 1.*

[3]  Disclosure of Compensation of Attorney for Debtor(s), *Id.* at 54.

[4]  Chapter 13 Plan, *Case No. 17-11083-M, Docket No. 6*; First Amended Chapter 13 Plan, *Id., Docket No. 20*; Second Amended Chapter 13 Plan, *Id., Docket No. 24.*

Colpitts.[5]

The Hills were unable to propose a confirmable Chapter 13 Plan.  On October 11, 2017, the Hills filed a Notice of Conversion exercising their right under § 1307(a) to convert their case to one under Chapter 7.[6]  As a result, the services of Lonnie D. Eck ("Eck"), the Standing Chapter 13 Trustee, were terminated, and Karen C. Walsh ("Walsh") was appointed the Chapter 7 Trustee.  On November 9, 2017, Walsh filed a Chapter 7 Trustee's Report of No Distribution stating there was no estate property available for distribution, and that the estate had been fully administered.  An Order of Discharge was entered for both debtors in the Hill's Chapter 7 case on January 16, 2018.

Soon after filing the Notice of Conversion, Colpitts filed a second Disclosure of Compensation, indicating that the Hills had provided him with a retainer of $1,475 to provide services related to their Chapter 7 bankruptcy case.[7]  Colpitts also filed an Application for Allowance of Attorney's Fees (the "Hill Fee Application"), in which he itemized 18.35 hours of attorney services and 8.93 hours of administrative assistant services provided in the Hill Case.[8]  Colpitts also sought reimbursement of expenses of $208.  In total, Colpitts details $5,963.87 in fees and expenses.  Colpitts has applied a retainer of $1,475 to the fees, leaving a balance due of $4,488.87.  In the Hill Fee Application, Colpitts asserts that Eck is holding $6,712.50 in this case, and requests that Eck pay him directly for his fees and expenses incurred before refunding any monies to the Hills.  Eck

---

[5] *Id., Docket No. 24.*

[6] *Id., Docket No. 26.*

[7] *Id., Docket No. 34.*  In the Hill Fee Application, Colpitts represents that the retainer was paid by the Debtors before the filing of the case.

[8] *Id., Docket No. 35.*

supports the request.

***Prayoon and Manivone Chanthavong***

On July 28, 2017, Prayoon Randy Chanthavong and Manivone Chanthavong (the "Chanthavongs") filed a petition for relief under Chapter 13 of the United States Bankruptcy Code (the "Chanthavong Case").[9] The case was filed with the assistance of Colpitts as counsel. For his services related to the Chanthavong Case, Colpitts agreed to accept $2,800, $800 of which was received prior to filing the case.[10] Colpitts disclosed that his services would be billed at a rate of $300 per hour for attorney time and $70 per hour for legal assistant time, in addition to actual expenses. Colpitts also stated that in the event the value of his services exceeded $2,800, he would file an additional application with the Court. The remaining balance due to Colpitts was to be paid over time through the Chanthavong's Chapter 13 Plan (the "Chanthavong Plan").[11] The Chanthavong Plan set forth that $750 of their monthly plan payments in months 1 through 6 would be reserved and paid to Colpitts upon confirmation of the Chanthavong Plan and approval by the Court of a fee application submitted by Colpitts.[12]

The Chanthavong Plan was never confirmed. On October 31, 2017, the Chanthavongs filed a Notice of Conversion, exercising their right under § 1307(a) to convert their case to one under Chapter 7.[13] As a result, the services of Eck were terminated, and Steven W. Soule ("Soule") was

---

[9] *Case No. 17-11503-M, Docket No. 1.*

[10] Disclosure of Compensation of Attorney for Debtor(s), *Id.* at 51.

[11] Chapter 13 Plan, *Case No. 17-11503-M, Docket No. 6.*

[12] *Id.*

[13] *Id., Docket No. 18.*

4

appointed the Chapter 7 Trustee.  On January 2, 2018, Soule filed a Chapter 7 Trustee's Report of

No Distribution, indicating that there was no estate property available for distribution, and that the

estate had been fully administered.  An Order of Discharge was entered for both debtors in the

Chanthavong's Chapter 7 case on February 1, 2018.

Colpitts filed an Application for Allowance of Attorney's Fees (the "Chanthavong Fee

Application"), in which he indicated that he had provided 14.15 hours of attorney services and 12.16

hours of administrative assistant services in the Chanthavong Case.[14]  He also listed reimbursable

expenses of $123.41.  The Chanthavong Fee Application contains a detailed description of the time

spent by Colpitts and his staff on the Chanthavong Case.  In total, Colpitts seeks approval and

payment of $4,988.94 in fees and expenses.  He states that he has applied a retainer of $800, and

taken a voluntary discount of $367.62, leaving a balance due of $3,821.32.  In the Chanthavong Fee

Application, Colpitts asserts that Eck is holding $4,650 in this case, and he requests that Eck pay him

directly for his fees and expenses incurred. Eck supports the request.

On January 9, 2018, the Court held a hearing in both cases to allow Colpitts and/or Eck to

address concerns regarding the direct payment of Colpitts's fees from funds held by Eck.

Specifically, the Court asked them to address whether the decision of the United States Supreme

Court in *Harris v. Viegelahn*[15] affected Colpitts's fee applications.  The Court heard argument and

took the matter under advisement.

**Conclusions of Law**

Chapter 13 bankruptcy is a voluntary arrangement whereby debtors present a plan to the

---

[14] *Id., Docket No. 21.*

[15] 135 S.Ct. 1829 (2015).

Court and their creditors to repay all or some of their debts out of their future earnings or other future income.  After notice to all affected creditors and a hearing, the Court will confirm a plan if it complies with the provisions of the Code. The Chapter 13 Trustee is charged with collecting payments made under the proposed plan and, after the plan has been confirmed, distributing those funds to creditors.  The structure of this scheme requires the Chapter 13 Trustee to accumulate and hold funds until the plan is confirmed.[16]  Once a plan is confirmed, the Chapter 13 Trustee will then distribute those funds according to the plan.[17]

Sometimes things go awry before a Chapter 13 plan gets confirmed.  Because Chapter 13 bankruptcy is wholly voluntary, debtors are free, in the absence of bad faith, to dismiss or convert their cases to a case under Chapter 7 at any time, assuming they are eligible for relief under that chapter.[18]  When that happens, the Chapter 13 Trustee is often, as here, left holding money that he or she received during the pendency of the Chapter 13 case.  With certain exceptions,[19] because those funds represent future earnings and income of the debtors, they are not property of the debtors'

---

[16]  Bankr. N.D. Okla. Local Rule 3070-2(F) ("The trustee shall hold all plan payments received (including the portion of the plan payments upon which a lien has been provided for under the plan) until confirmation of a plan, dismissal or conversion of the case.").

[17]  *Id.* ("If a plan is confirmed, the trustee shall disburse all payments held as provided in the confirmed plan.").

[18]  § 1307(a, b, & g).

[19]  The Court is aware that Eck has a practice, pursuant to the Local Rules of this Court, of paying adequate protection payments to creditors from funds held upon the conversion of a case where a plan has not been confirmed. *See* Bankr. N.D. Okla. Local Rule 3070-2(F). The Court is also aware that *Harris v. Viegelahn* could be interpreted to invalidate that practice. Because that issue has been neither raised nor briefed in these cases, the Court is purposely side-stepping it here.

6

Chapter 7 estate, and must be returned to the debtors.[20]  It is just such funds, being held by Eck, that Colpitts seeks to have paid directly to him as compensation for services rendered to the Hills and Chanthavongs in their Chapter 13 cases.

The Hill Fee Application and the Chanthavong Fee Application (collectively, the "Fee Applications") present three distinct questions for the Court.  The first is whether the Fee Applications reflect a reasonable expense of administration under §§ 330(a)(4)(B)[21] and 503(b).[22] The second is whether those administrative expenses can be paid directly to Colpitts from funds held by Eck, or whether Eck must distribute those funds directly to the debtors.  Lastly, the Court must consider what other means might be available to Colpitts to recover his fees.

*1.  Administrative expenses under §§ 330(a)(4)(B) and 503(b)*

There was no dispute presented to the Court regarding the reasonableness or the necessity of Colpitts's fees in either case.  The Court finds that Colpitts's hourly rate and the time spent in the Hill and Chanthavong Cases are reasonable, to the extent they were provided prior to the filing of

---

[20]  *See Harris v. Viegelahn*, 135 S.Ct. 1829, 1838 (2015).

[21]  § 330(a)(4)(B) provides that

In a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

[22]  § 503(b) provides that

After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including–
* * *
(2) compensation and reimbursement awarded under section 330(a) of this title[.]

7

the Notice of Conversion in each case.  Except for 1.2 hours of attorney time and $94.64 in expenses billed on October 12, 2017, a date after the filing of the Notice of Conversion, the Court finds that the fees and expenses requested by Colpitts in the Hill Case are reasonable under § 330(a)(a)(4)(B), and may be approved as an administrative expense pursuant to § 503(b). Colpitts is allowed an administrative expense claim of $4,034.23 in the Hill Case.[23]  Except for 0.75 hours of attorney time and $74.36 in expenses billed on November 1, 2017, a date after the filing of the Notice of Conversion, the Court finds that the fees and expenses requested by Colpitts in the Chanthavong Case are reasonable under § 330(a)(a)(4)(B), and may be approved as an administrative expense pursuant to § 503(b).  Colpitts is allowed an administrative claim of $3,821.32 in the Chanthavong Case.[24]

*2.  Distribution of funds held by the Standing Chapter 13 Trustee*

Approval of fees is one thing; ordering Eck to pay Colpitts is another.  Colpitts suggests that the Court should look to § 1326(a)(2) for authority to order Eck to pay his administrative claim directly from funds Eck holds that would otherwise be distributed to the debtors.  Section 1326(a)(2) provides that

> A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation. . . . If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).

---

[23]  Subtracting $360 in attorney fees and $94.64 in expenses from a balance due of $4,488.87, yields $4,034.23.

[24]  It appears that Colpitts applied a voluntary discount to the Chanthavong Fee Application so that his fee request would not exceed the funds held by Eck for distribution to debtors.  Because this discount exceeds the unapproveable fees and expenses charged after the conversion of the case, the Court will not further reduce Colpitts's fee in the Chanthavong case.

In a vacuum, the language of § 1326(a)(2) appears to support Colpitts's conclusion that Eck should

pay his § 503(b) claim directly.  However, this argument fails to recognize the pronouncement of the

Supreme Court of the United States that upon conversion to Chapter 7, the provisions of Chapter 13

are no longer applicable.[25]  As the Supreme Court recently noted, "When a debtor exercises his

statutory right to convert, the case is placed under Chapter 7's governance, and *no Chapter 13*

*provision holds sway*."[26]  Therefore the Court cannot rely on § 1326(a)(2) to order Eck to pay

Colpitts directly.

Looking beyond Chapter 13, the Court does not find any provision of the Code that would

allow it to order Eck to pay Colpitts directly from accumulated funds.  Section 348(e) provides that

the conversion of the case to Chapter 7 terminated Eck's services.[27]  Section 348(f) provides that

when a case is converted from a case under Chapter 13 to another chapter, "property of the estate in

the converted case shall consist of property of the estate, as of the date of filing of the petition, that

remains in the possession of or is under the control of the debtor on the date of conversion[.]"[28]  This

means that a debtor's postpetition wages, including those collected by the Chapter 13 trustee in the

---

[25] § 103(i). ("Chapter 13 of this title applies only in a case under such chapter.").  *See Harris v. Viegelahn*, 135 S. Ct. 1829, 1838 (2015).

[26] *Harris v. Viegelahn,* 135 S.Ct. at 1838 (citing § 103(i)) (emphasis added).  Colpitts suggests that statements made in *Harris v. Viegelahn* are inapplicable to these cases because the plan at issue in *Harris* had been confirmed prior to the conversion to Chapter 7.  The Court acknowledges the factual distinction, but can find no language, either in *Harris* or in the Code, that would suggest a different outcome when a case is converted prior to plan confirmation.

[27] § 348(e) ("Conversion of a case under section 706, 1112, 1208, or 1307 of this title terminates the service of any trustee or examiner that is serving in the case before such conversion.").

[28] § 348(f)(1)(A).  This provision is subject to exceptions that are not applicable here.

9

administration of the case, do not become part of the Chapter 7 estate after conversion.[29]   The undistributed funds held in the hands of the Chapter 13 trustee are property of the debtor, and not the estate.

Federal Rule of Bankruptcy Procedure 1019 dictates the obligations of a Chapter 13 trustee when a case has been converted to Chapter 7.  He or she must: 1) turn over all records and property of the estate in his or her possession or control to the Chapter 7 trustee; and 2) file and transmit a final report and account to the United States Trustee.  Although not expressly stated in the Code, a Chapter 13 trustee must also distribute accumulated funds to their rightful owner.[30]  To the extent those funds are property of the debtor and not the estate, they should be so returned.[31]

### 3.  Other means of recovery of an administrative expense claim

Holding a § 503(b) administrative claim in a converted Chapter 7 case does not necessarily result in payment.  Such a claim is payable from property of the estate in the converted Chapter 7 case to the extent assets are available for distribution.[32]  An approved administrative expense incurred before the conversion of the case to Chapter 7 is junior to Chapter 7 administrative expenses.[33]  To the extent an administrative claim remains unpaid at the conclusion of the Chapter

---

[29] *Harris v. Viegelahn*, 135 S.Ct. at 1837.

[30] *Id.* at 1838.

[31] *But see supra* note 19 regarding adequate protection payments to creditors.

[32] §§ 726(a)(1), 507(a)(2).

[33] § 726(b).  *See In re Burkall*, 572 B.R. 860, 861 (Bankr. W.D. Mich. 2017).

7 case, it is subject to discharge.[34]  Therefore, any efforts by Colpitts to collect his fees from these

debtors would run afoul of the discharge injunction.[35]  While Colpitts's claims have been discharged

in these cases, nothing prevents the debtors from voluntarily paying the allowed administrative

claims now that the order of discharge has been entered.[36]

### Conclusion

The Court takes no joy in today's ruling.  The Court is aware that bankruptcy professionals

must be assured of being fairly compensated if they are to continue engagement with insolvent

clients.  But the Court is constrained by the Code and Bankruptcy Rules, and is not free to rewrite

those to create a more palatable result.  While there may be other ways to skin this particular

---

[34] *See In re Fickling*, 361 F.3d 172, 175 (2d Cir. 2004) (conversion from Chapter 11); *In re Toms*, 229 B.R. 646, 653 (Bankr. E.D. Pa. 1999) (conversion from Chapter 13).  Section 727(b) provides:

> Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from *all debts that arose before the date of the order for relief under this chapter*, and any liability on a claim that is determined under section 502 of this title as if such claim had arisen before the commencement of the case, whether or not a proof of claim based on any such debt or liability is filed under section 501 of this title, and whether or not a claim based on any such debt or liability is allowed under section 502 of this title.

§ 727(b) (emphasis added).  "The date of 'the order for relief' under chapter 7, in a converted case, refers to the date of conversion."  *In re Toms*, 229 B.R. at 653 (citing § 348(b)).

[35] *See, e.g., In re Cripps*, 549 B.R. 836, 863 n.31 (Bankr. W.D. Mich. 2016) ("The discharge precludes an attorney for a debtor from taking any action to collect fees and expenses, including by sending demand letters."), *aff'd*, 566 B.R. 172 (W.D. Mich. 2017).

[36] *Id.* ("An attorney is not, however, precluded from accepting a strictly voluntary payment from a debtor post-discharge, so long as the fees and expenses have been approved by the court. 11 U.S.C. § 524(f). Of course, the attorney is obligated to disclose any such payment, including after the case is closed, if it is made "in connection with the case," an extremely broad phrase.").

11

cat—other than filing a fee application in an already converted case—the Court will not speculate on what those might be.

Colpitts is allowed an administrative expense claim of $4,034.23 in the Hill Case and an administrative claim of $3,821.32 in the Chanthavong Case.  Because these claims represent discharged debts in each of the respective Chapter 7 cases, the Court is without authority to order Eck to pay those claims from funds held for distribution to the debtors.

Separate judgments consistent with this Memorandum Opinion shall be entered concurrently herewith.

Dated this 22nd day of March, 2018.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

7215.4

12